**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

JEAN EMMANUEL RODRIGUEZ,

        Plaintiff,

        v.

THE STATE OF NEW JERSEY, et al.,

        Defendants.
_____

Civil Action No. 13-4101 (RMB)

**OPINION**
**APPLIES TO ALL ACTIONS**

_____

JEAN EMMANUEL RODRIGUEZ,

        Plaintiff,

        v.

BERNARD E. DELURY, JR., et al.,

        Defendants.
_____

Civil Action No. 13-5866 (RMB)

_____

JEAN EMMANUEL RODRIGUEZ,

        Plaintiff,

        v.

THE CITY OF SOMERS POINT,

        Defendant.
_____

Civil Action No. 13-6131 (RMB)

_____

JEAN EMMANUEL RODRIGUEZ,

        Plaintiff,

        v.

BERNARD E. DELURY, JR.,

        Defendant.
_____

Civil Action No. 13-6132 (RMB)

```
. . . continued
_____
                                  :
JEAN EMMANUEL RODRIGUEZ,          :
                                  :  Civil Action No. 13-6178 (RMB)
            Plaintiff,            :
                                  :
            v.                    :
                                  :
STEPHANIE K. THEWS, et al.,       :
                                  :
            Defendants.           :
_____   :
                                  :
JEAN EMMANUEL RODRIGUEZ,          :
                                  :  Civil Action No. 13-6179 (RMB)
            Plaintiff,            :
                                  :
            v.                    :
                                  :
THE STATE OF NEW JERSEY,          :
                                  :
            Defendant.            :
_____   :
```

**OPINION**
**APPLIES TO BOTH ACTIONS**

These six civil matters come before the Court upon the Clerk's receipt of an informal notice and four civil complaints executed by Jean Emmanuel Rodriguez ("Plaintiff"), a litigant who already commenced two prior civil actions in this District, with regard to one of which the Court granted in forma pauperis status and directed re-pleading and terminated the other as potentially duplicative. For the reasons stated below, Plaintiff's in forma pauperis status will be temporarily suspended in the matter where such status was granted, with leave to seek restoration of the same. All Plaintiff's pleadings submitted in these six matters

will be dismissed with leave to amend the claims Plaintiff wishes to litigate, if any.[1]

Plaintiff's history of litigation in this District began on July 2, 2013, when the Clerk received his civil complaint that gave rise to Rodriquez v. State of New Jersey ("Rodriquez-I"), Civil Action No. 13-4101 (RMB) (D.N.J.).[2] Plaintiff accompanied that complaint with an application to proceed in forma pauperis, in support of which he submitted his affidavit of poverty, see Rodriquez-I, Docket Entry No. 1-1,[3] and designated his address as "100 New Road, Apt. F3, Somerset Point, New Jersey 08244." Id., Docket Entry No. 1, at 2.

Therefore, the Court construed Plaintiff's in forma pauperis application as that filed by an individual not held in pre-trial or post-conviction custody and, correspondingly, granted him in

---

[1] The informal notice received from Plaintiff indicates his substantial confusion as to the procedural posture of his actions since the notice read, "I am trying to amend 13-4101. . . . [T]hat matter was dismissed . . . , as well as all of the matters I have recently sent. Please disregard all those matters and focus on this one." See notice docketed in Civil Action No. 13-5866, Docket Entry No. 4, page 9.

[2] The Court cannot rule out that Plaintiff had commenced other litigations in this District prior to Rodriquez-I.

[3] That application asserted, somewhat puzzlingly, that New Jersey Institute of Technology owed Plaintiff $2,231 and an unspecified body owed him $15,000 in "student loans." See Rodriquez-I, Docket Entry No. 1-1, at 3. In light of this, the Court concluded that Plaintiff: (a) misread the question posed in the affidavit; (b) intended to assert that he owed these amounts; and, thus, (c) qualified under the statute.

3

forma pauperis status without directing submission of his prison account statement. See id., Docket Entry No. 2. In conjunction with the same, the Court screened Plaintiff's Rodriquez-I complaint. The complaint raised a panoply of vaguely articulated challenges and named a long list of defendants with regard to whom Plaintiff omitted to detail any facts indicating their personal involvement in any wrongs.[4] Therefore, the Court

---

[4] Plaintiff named, as defendants in Rodriquez-I, the State of New Jersey, New Jersey Governor Chris Christie, United States Senator Jeffery S. Chiesa, numerous individuals who, the Court surmised, might have been employed by New Jersey Attorney General Office (i.e., Alan B. Handler, James R. Zazzali, Edward J. Dauber, Theodore Z. Davis, John J. Farmer Jr., Theresa M. Kiuck, Alice Click, Richard W. Roper, M. Karen Thompson), the Atlantic County and numerous individuals who, the Court surmised, were performing certain functions for that county or for the Superior Court of New Jersey, Law Division, Atlantic County vicinage (i.e., Dennis Levinson, Judge Mark H. Sandson, Judge James E. Isman, Judge Joseph 1. Marczyk, Judge Nelson C. Johnson, Theodore F. L. Housel, Eric Shenkus, Erica Halayko, Jessica Ramirez), the City of Atlantic City and numerous individuals who, the Court surmised, were performing certain functions for that City or for its municipal courts (i.e., Lorenzo T. Langford, Judges Bruce F. Weekes, Braun Littlefield, Kelly Hasson Blanchet, Michelle Funk, Ernest Jubilee, John Devlin, Tim Friel, Sgt. Hendricks, Arthur Freedman and unspecified "staff), the County of Essex County and two individuals who, the Court surmised, were performing certain functions for that county or the Superior Court of New Jersey, Law Division, Essex County vicinage (i.e., Joseph N. DiVincenzo, Jr. and Judge Hutchins Henderson), the City of Newark, its then-serving Mayor, Corey Booker, and certain individual (Natasha Purvey) who, the Court surmised, performed certain functions for that City, as well as two individuals whose connection to the above-listed entities or individuals, or even to Plaintiff, the Court could not surmise (i.e., certain Tracy L. Riley and Pat Hallman). Plaintiff's patchy allegations made mention of certain arrest(s) that were followed by certain criminal proceeding(s) and numerous penal convictions. Those multiple transactions seemingly took place during the period from 2006 to 2012. The Rodruguez-I complaint concluded with the following demand:

4

dismissed the Rodriguez-I complaint without prejudice to filing an amended pleading stating Plaintiff's facts. See id., Docket Entry No. 2. To assist Plaintiff with that task, the Court summarized for him the pleading requirement. See id. at 2-3.

In response, Plaintiff submitted his amended Rodriguez-I pleading. See id., Docket Entry No. 3. That pleading named, as defendants, the same entities and individuals, made the same demands and allegations and, in addition, included a mentioning of a certain "fraudulent hearing" conducted by the Advisory Committee on Judicial Conduct (that is, an arm of the Supreme

---

> The State of New Jersey shall over[]turn every conviction [entered against [Plaintiff], and refund all monetary assets falsely acquire, from [Plaintiff as a result of his arrests, multiple criminal prosecutions and numerous penal convictions, such as] (time, money, social credibility, and all assets . . . . The fraudulent entities in the Cities of Atlantic City and Newark, and the Counties of Atlantic and Essex shall be disbarred and brought up before the proper authorities to answer for their actions. The State of New Jersey and all participating entities shall pay every debt acquired by [Plaintiff] during these transgressions. The State of New Jersey shall provide free room, board, and tuition [to Plaintiff] at New Jersey Institute of Technology, so that [he could] obtain two bachelor degrees of his choice. The State of New Jersey shall [also] provide tuition, room, and board at Rutgers University, so [that Plaintiff could] obtain a degree in law and enter a master's program [of unspecified specialization]. The Cities of Atlantic City and Newark shall contribute the sum $500,000.00 [British] pounds to [ensure] the well-being of [Plaintiff].

Rodriguez-I, Docket Entry No. 1, at 2.

5

Court of New Jersey) in response to what, seemingly, was Plaintiff's filing of a grievance against one of the Superior Court judges who presided either over his criminal proceeding or his appeal. See id.

The Court screened that amended pleading and, taking notice of the incoherence and factual insufficiency of Plaintiff's allegations, dismissed that pleading too while providing a detailed explanation of the pleading standard and issuing Plaintiff another leave to amend. See id., Docket Entry No. 4.

The second amended complaint followed. See id., Docket Entry No. 5. It, too, named the same list of entities and individuals as defendants, made the same demands and asserted, without a specification, the wrongs of "arresting Plaintiff without probable cause," "detaining Plaintiff for an extended period of time without probable cause," "ransoming Plaintiff's freedom without probable cause," "continuously summoning Plaintiff without probable cause," "denying Plaintiff proper counsel," "prosecuting Plaintiff with fraudulent accusations," "denying Plaintiff equal rights under the law," "conspiring against the civil rights of Plaintiff," "breach of verbal contract and defamation of Plaintiff's character." Id. at 3.

The Court screened Plaintiff's second amended complaint and, once again, dismissed it while re-explaining, at great length, the pleading standard. See id., Docket Entry No. 6. at 2-4.

Out of an abundance of caution, the Court allowed Plaintiff one more opportunity to submit a viable civil complaint in Rodriquez-I within thirty days from the date of entry of the Court's order. See id. at 4. Plaintiff, however, made no submissions in Rodriquez-I.[5] Rather, on October 2, 2013, he submitted another civil complaint that gave rise to Rodriguez v. DeLury ("Rodriquez-II"), Civil Action No. 13-5866 (RMB) (D.N.J.). See Rodriquez-II, Docket Entry No. 1.

The Rodriquez-II complaint indicated that Plaintiff was held in either pre-trial or post-conviction confinement, see id. at 2, but did not provide the Court with any information as to the date when his confinement commenced.[6] Moreover, the Rodriquez-II complaint arrived unaccompanied by the applicable filing fee or by Plaintiff's application to prosecute Rodriquez-II in forma pauperis. See id., Docket Entry No. 1.

Being uncertain as to the connection, if any, between Plaintiff's allegations raised in Rodriquez-I and the claims

---

[5] In light of Plaintiff's informal notice, see note 1, supra, the Court has no clarity as to whether Plaintiff still wishes to continue with prosecuting Rodriquez-I or prefers to withdraw all Rodriquez-I claims.

[6] For the purposes of Rodriquez-I, Plaintiff merely mentioned his "place of residence." The complaint in Rodriquez-II mentioned that address while indicating that Plaintiff has been subject to certain criminal proceedings for a substantial period of time and was confined in connection with those proceedings. Hence, it appears now that Plaintiff was a confined individual at the time he commenced Rodriquez-I.

7

raised in Rodriguez-II, and mindful of the possibility that, in the event Plaintiff proved to be a confined individual, he would be assessed separate filing fees and exposed to the risk of incurring two "strikes" in connection with these two matters, the Court construed the pleading docketed in Rodriguez-II as Plaintiff's third amended complaint in Rodriguez-I. Hence, the Court clarified to Plaintiff the filing fee requirement, as well as the requirement associated with obtaining in forma pauperis status in the event one is a pre-trial detainee or post-conviction prisoner. See id. Docket Entries Nos. 2 and 3 (explaining that the filing fee was $400 but a confined individual could qualify for incremental assessment of only $350 fee upon submission of an affidavit and prison account statement establishing his status as a pauper).

The Court, therefore, extended Plaintiff's time to file a viable pleading in Rodriguez-I and deemed Rodriguez-II an action presumptively duplicative of Rodriguez-I.[7] See id., Docket Entry No. 3.

---

[7] The complaint in Rodriguez-II named, as defendants, state court judge Bernard DeLury, Jr., state prosecutor James McClaim and certain Geraldine Cohen ("Gohen"), and alleged that the judge and prosecutor "operate[d] an inferior court," while Cohen had Plaintiff "physically confined on a warrant" issued by an entity Plaintiff did not know. Rodriguez-II, Docket Entry No. 1, at 1.

8

Plaintiff however, did not file anything in Rodriguez-I. Nor did he make any submissions in Rodriguez-II. Rather, he sent the Clerk four civil complaints that gave rise to Rodriguez v. City of Somers Point ("Rodriguez-III"), Civil Action No. 13-6131 (RMB) (D.N.J.) (filed on Oct. 16, 2013); Rodriguez v. DeLury ("Rodriguez-IV"), Civil Action No. 13-6132 (RMB) (D.N.J.) (filed on Oct. 16, 2013); Rodriguez v. Thews ("Rodriguez-V"), Civil Action No. 13-6178 (RMB) (D.N.J.) (filed on Oct. 17, 2013); Rodriguez v. State of New Jersey ("Rodriguez-VI"), Civil Action No. 13-6179 (RMB) (D.N.J.) (filed on Oct. 17, 2013).[8] As in Rodriguez-II, each of these four complaints arrived unaccompanied by Plaintiff's filing fee or his in forma pauperis application.

The complaint in Rodriguez-III: (a) asserted, again (and just as in Rodriguez-I) that Plaintiff was residing at "100 New Road, Apt. F3, Somerset Point, New Jersey 08244"; but, simultaneously, (b) stated Plaintiff's mailing address at prison (hence indicating that he was a confined individual); (c) alleged that the City of Somers Point and its municiple court, as well as

---

[8] These four new matters were assigned to the undersigned pursuant to Rule 40.1, the District's anti-judge-shopping provision. See U.S. Dist. Ct. NJ. L. Civ. R. 40.1(c) ("A subsequent case or application filed by a pro se plaintiff shall . . . be assigned to the Judge to whom the first prior case or application of the plaintiff was assigned"); cf. Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 168 (2004) ("[Had] the rule [been] otherwise . . . [j]udge-shopping would then become an additional and potent tactical weapon in the skilled [litigant's] arsenal").

the City's police department, were "depriv[ing] Plaintiff . . . of life and liberty by false accusations, violation of probable cause, and . . . den[ial of] due process"; and (d) sought an "audio-video evidence from the holding cell [on the already past date of] August 12, 2013, between the hours of 12:00 a.m. and 4 p.m.," a deposition of a certain police officer, this Court's verification of "the validity of the inferior" Superior Court of New Jersey, and $1 million in damages for Plaintiff's "emotional distress, psychological abuse and social degradation." Rodriguez-III, Docket Entry No. 1.

The complaint in Rodriguez-IV indicated that Plaintiff held sovereign citizenship/redemptionist beliefs and wished to assert claims based on those beliefs, but see Bey v. Hillside Twp. Mun. Court, 2012 U.S. Dist. LEXIS 28397 (D.N.J. Feb. 29, 2012) (detailing, at great length, the nature and facial legal invalidity of such beliefs and facial frivolity of all claims and allegations based on such beliefs). This complaint asserted that Judge DeLury violated Plaintiff's rights by asking him about his status and by declining what seemed to be Plaintiff's request for verification of the Superior Court's jurisdictional mandate to prosecute Plaintiff.[9] See Rodriguez-IV, Docket Entry No. 1.

---

[9] Plaintiff's reference to the Uniform Commercial Code after his name and his statement that he questioned the Superior Court's jurisdictional mandate indicate that he wished to raise so-called "Marrakush" challenges. See Bey, 2012 U.S. Dist. LEXIS

Plaintiff closed by requesting: (a) this Court's "dismissal" of all state penal statutes; and (b) $1 million in damages for Plaintiff's "emotional distress, psychological abuse, social degradation and physical discomfort." Id. at 1.

The complaint in Rodriguez-V: (a) named Stephanie K. Thews, John G. Barbieri, Howard Freed, Mark G. Mcelwee, Jr., Shawn G. Mckelvey and John J. Miller as defendants; (b) asserted that these defendants "deprived" Plaintiff "of life and liberty"" by entering certain testimony that Plaintiff deemed fraudulent;[10] (c) requested certain evidentiary rulings to be made for the purposes of Plaintiff's current criminal prosecution in the state court; and (d) sought compensatory damages in the amount of $1,000 for each day of his incarceration, as well as "dismissal" of all state penal statutes that served as bases for the penal charges underlying his current prosecution. See Rodriguez-V, Docket Entry No. 1.

---

28397, at *5, 10-11 (relying on Marrakush Soc'y v. N.J. State Police, 2009 U.S. Dist. LEXIS 68057 (D.N.J. July 30, 2009), and its progeny to detail invalidity of such challenges).

[10] The Court surmises that Plaintiff might have had a recent grand jury proceeding or a hearing conducted in connection with what seems to be his currently ongoing criminal prosecution, and the testimonies at issue were offered during those proceedings. Hence, it appears that the persons named as defendants in Rodriguez-V were the prosecutor(s) and testifying witnesses.

Finally, in his Rodriguez-VI complaint, Plaintiff named the State of New Jersey and the Governor's Office as defendants and, upon asserting "depriv[ation] of life, liberty, property and due process," requested $5 million for his "emotional distress, psychological abuse, social degradation," as well as $10,000 per each hour of incarceration. Rodriguez-VI, Docket Entry No. 1.

Since, at this juncture, Plaintiff neither prepaid the $400 filing fee nor qualified for in forma pauperis status with regard to his Rodriguez-II, Rodriguez-III, Rodriguez-IV, Rodriguez-V, and Rodriguez-VI, reaching the merits of his allegations would be premature. See Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013).[11] Moreover, Plaintiff's qualification for in forma pauperis status in Rodriguez-I has become questionable in light of his later-made submissions suggesting that Plaintiff migfht have been incarcerated at the time he commenced Rodriguez-I. Therefore, Plaintiff's in forma pauperis status in Rodriguez-I will be suspended, subject to restoration in the event he provides the Court with proof that, on July 2, 2013, he was *not* in custody.[12]

---

[11] In light of Plaintiff's informal notice, the Court is in no position to determine which of these five matters Plaintiff is interested in prosecuting.

[12] In light of Plaintiff's informal notice, the Court is in no position to determine whether Plaintiff is still interested in trying to mount a viable claim in Rodriguez-I.

12

With regard to each of the remaining actions, he will be directed to prepay his $400 filing fee or duly apply for in forma pauperis status. (Since the Court already detailed to Plaintiff the requirements, obligations and consequences associated with obtaining in forma pauperis status, another recital of the same appears superfluous.)

In conjunction with the foregoing, Plaintiff will be allowed one final opportunity to amend his claims scattered among his many complaints; such final amended pleading(s) shall be executed in strict compliance with the pleading requirement the Court already explained to Plaintiff time and again. The Court stresses that Plaintiff's amended pleadings, if filed, shall be free of any sovereign citizenship, redemptionist, "Marrakush" and akin allegations, see Bey, 2012 U.S. Dist. LEXIS 28397,[13] since such claim, if asserted, would be deemed frivolous and make a mockery of this Court and may result in sanctions.

Moreover, taking notice other deficiencies of Plaintiff's submissions made in the above-captioned six matters, the Court finds it warranted to clarify to Plaintiff the requirements of Rule 18 and 20, the prohibition on duplicative litigations, the limitation on the scope of amended pleadings (ensuing from Rule

---

[13] The Court will attach the opinion entered in Bey, 2012 U.S. Dist. LEXIS 28397, to the Order accompanying this Opinion.

13

15), as well as the unavailability of habeas relief in civil matters and insufficiency of pleading respondeat superior claims.

Rule 20 of the Federal Rules of Civil Procedure governs the joinder of defendants, while Rule 18 governs the joinder of claims. See Fed. R. Civ. P. 18(a), 20(a)(2). Specifically, Rule 20 provides that "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is . . . arising out of the same transaction, occurrence, or series of transactions." Fed. R. Civ. P. 20(a)(2)(A). Rule 18, in turn, provides that "[a] party asserting a claim . . . may join . . . as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), and Wright and Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18. See Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure Civil 3d § 1655; see also United States v. Mississippi, 380 U.S. 128, 143 (1965); Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied). Consequently, a civil plaintiff may not name more than one defendant in his original or even amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant

14

and involves a common question of law or fact.  See Fed. R. Civ. P. 20(a)(2).  Notably, claims by incarcerated individuals are not exempt from the reach of Rules 18 and 20.  See George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007) ("A [scatter]shot complaint that would be rejected if filed by a free person . . . should be rejected if filed by a prisoner").  Therefore, Plaintiff cannot litigate in a single action the events of his arrest, his prosecution, his grievance proceedings, etc., since each arrest presents its own transaction, each criminal proceeding conducted in courts is necessarily done by actors other than those who performed the arrest (i.e., neither the judges, nor prosecutors or defense counsel act as arresting officers), and a grievance process before an arm of the New Jersey Supreme Court is a transaction as distinct and different from a criminal proceedings as one criminal prosecution is distinct from another.  In other words, each transaction Plaintiff asserted in his diary-like Rodriguez-I complaint (which covered the period from 2006 to 2012) should be challenged in a separate complaint, and these transactions cannot be stitched together since such a "hodge-podge" of claims facially violates Rules 18 and 20.

Furthermore, federal courts bar attempts to commence "duplicative litigations"; such bar "foster[s] judicial economy . . . [ensures] 'comprehensive disposition of litigation,'" and "protect[s] parties from 'the vexation of concurrent litigation

15

over the same subject matter.'" Porter v. NationsCredit Consumer Disc. Co., 295 B.R. 529, 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003) (citing Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000), and quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)). Thus, Plaintiff cannot commence numerous actions challenging the same transaction, that is, the same transactional set of events compiling his current criminal prosecution cannot be challenged in two, three, four or five actions.

Next, Plaintiff cannot "amend" his prior pleading by asserting claims wholly unrelated to those asserted in the original pleading, see Fed. R. Civ. P. 15(c)(1)(B); a fortiori, he cannot "amend" his prior complaint by asserting claims unrelated and *non-existing* at the time of his submission of the prior pleading. Hence, Plaintiff cannot stitch his current criminal prosecution to such transactions as his arrests, prosecutions and convictions that took place between 2006 and 2012. His amended pleading challenging his current criminal prosecution should be submitted in the action where he challenged the same or related transactions originally. Id. ("An amendment to a pleading relates back [if] the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading").

16

Furthermore, Plaintiff cannot seek invalidation of his convictions in a civil action since such challenges are, necessarily, of habeas nature and can be raised only in a proper habeas petition.[14]

Finally, in light of Plaintiff's tendency to name, as defendants, executive officers, supervising officers, counties, municipalities, etc., the Court finds it warranted to point out that § 1983 claims cannot be based on a defendant's supervisory position or on the fact of being the employing entity. This is so because employers and supervisors cannot be held liable for the actions of their subordinates unless the litigant asserts facts showing these employers' or supervisors' personal involvement in the alleged wrongs. See Ashcroft v. Iqbal, 556

---

[14] In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and habeas corpus. In Preiser, state prisoners brought a § 1983 action seeking injunctive relief to compel restoration of their jail credits, which would have resulted in their speedier release. See id. at 476. The Supreme Court pointed out that a prisoner must bring challenges to "the fact or duration of confinement" as a habeas corpus petition. See id. at 500; see also Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]henever the challenge ultimately attacks the 'core of habeas' - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition"). Hence, Petitioner's attacks on his convictions could be raised in the state forum only by a timely and duly exhausted habeas corpus petition. The Court, however, stresses that no statement made in this Opinion or accompanying Order shall be construed as expressing the Court's position as to procedural or substantive validity or invalidity of Plaintiff's habeas challenges, if filed.

U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").[15]

For the foregoing reasons, Plaintiff's in forma pauperis status will be suspended with regard to Rodriguez-I and denied with regard to all other above-captioned matters. Plaintiff will be allowed an opportunity to show that he was not in custody at the time he submitted seek in forma pauperis application in Rodriguez-I and he would be permitted to seek in forma pauperis status as to his five other above-captioned actions. In the alternative, he will be allowed to prosecute these actions by prepaying $400 fee with regard to each matter he elects to prosecute.

In the event Plaintiff elects to seek restoration of in forma pauperis status in Rodriguez-I or obtain the same in any of his remaining matters (or in the event he prepays $400 fee in any of these matters), Plaintiff will be directed to submit in that matter his amended pleading: (a) stating solely the facts of his claims in accordance with the pleading requirement posed by Rule

---

[15] Furthermore, § 1983 claims seeking damages from the State or its agencies/agents acting in their official capacity (and, thus, payable from the State's treasury) are barred by the Eleventh Amendment. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Lavia v. Pennsylvania Dep't of Corrs., 224 F.3d 190, 195 (3d Cir. 2000); Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

8; (b) naming the defendants personally implicated by the alleged wrongs Plaintiff would assert; (c) avoiding duplication of these claims in different actions; (d) avoiding conflation of claims in violation of Rules 18 and 20; (e) not raising challenges unrelated to the original challenges, in violation of Rule 15; and (f) omitting any references to Plaintiff's sovereign citizenship/redemptionist or Marrakush beliefs.[16]  An appropriate Order follows.

>                             s/Renée Marie Bumb
>                             **RENÉE MARIE BUMB**
>                             **United States District Judge**

Dated: October 23, 2013

---

[16] Plaintiff is reminded that this leave to cure the deficiencies of his pleadings will be final, and no further leave will issue.  Therefore, the Court urges Plaintiff to select his claims thoughtfully, state the facts of his claims clearly and concisely, without resorting to meaningless conclusory statement or generalities, such as assertions that "defendants deprived Plaintiff of life, liberty and property," or that defendants subjected Plaintiff to "cruel and unusual punishment," etc.  Cf. Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (plaintiff must state "'the who, what, when, where, and how: the first paragraph of any newspaper story'" ) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)); accord Clauso v. Glover, 2012 U.S. Dist. LEXIS 139205, at *21-22 (D.N.J. Sept. 26, 2012) ("[Plaintiff's] 'poetic license' [statements] are not a basis for relief.  Simply put, dry facts stated in a clear and concise pleading speak volumes for the purposes of any legal proceeding, while eloquent poetic 'nothings' are invariably dismissed as pure rhetoric"); In re Telfair, 745 F. Supp. 2d 536, 580 (D.N.J. 2010) ("The courts in this nation stand ready to address challenges brought by litigants in good faith.  Which, in turn, means that the judiciary — including the Judges in this District — expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary").